```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                       JACKSONVILLE DIVISION
```

ROBERT W. VICTOR,

                Plaintiff,

v.                                      Case No. 3:06-cv-479-J-33TEM

MAKITA U.S.A., INC.,

                Defendant.
_____/

**ORDER**

This cause comes before the Court pursuant to Defendant's Motion for Final Dismissal with Prejudice, or in the Alternative, for the Entry of an Appropriate Spoliation Remedy (Doc. # 21), filed on June 20, 2007. Victor filed a response on July 3, 2007. (Doc. # 26.) For the reasons stated below, the motion is denied.

**I.   Background**

According to the complaint, Victor was injured when a circular saw manufactured by Makita malfunctioned. (Doc. # 1.) On January 12, 2006, Victor was using the saw at work. (Doc. # 1.) The power was interrupted, stopping the saw. (Doc. # 1.) Victor backed the saw out of the cut he was making and removed his hands from the saw. (Doc. # 1.) When the power was restored, the saw turned on by itself and cut Victor severely.[1] (Doc. # 1.)

---

[1] Apparently, the saw had a trigger switch that was designed to activate the saw when the trigger was pulled and deactivate the saw when the trigger was released. (See generally Doc. # 21-2; cf. Doc. # 21, at 2 (noting Victor's contention that the saw activated

1

In early February 2006, Victor's counsel provided the offending saw to a professional engineer named John Leffler. (Doc. # 21-2, at 3.) Leffler disassembled the saw and the power switch. (Doc. # 21, at 2.) Leffler documented his inspection of the saw with photographs and a written report, including photographs taken from multiple angles prior to disassembly. (Doc. # 21-2, 21-3.) Leffler determined that the power switch had failed, causing the accident. (Doc. # 21-2, at 11.) Victor filed this lawsuit on May 24, 2006, alleging four counts: (1) products liability; (2) negligence; (3) breach of implied warranty of merchantability; and (4) breach of express warranty.

## II. The Parties' Arguments

Makita argues that Leffler's disassembly of the saw was itself destructive of evidence. Specifically, the disassembly deprived Makita of the opportunity to examine the saw in the exact condition it was in after the accident. (Doc. # 21, at 2.) Makita points to three tests it could have performed on the saw had Leffler not disassembled it. (Doc. # 21, at 7.) First, Makita contends that it would have been able to supply power to the saw to see if it really did operate despite the switch being in the off position. (Doc. # 21, at 7.) Second, Makita says it would have tested the switch with an ohmmeter to measure electrical resistance. (Doc. # 21, at 7.) Finally, Makita explains that it could have X-rayed the

---

without the switch being manually depressed).)

2

saw to inspect the switch.  (Doc. # 21, at 7.)  Because Leffler's disassembly prevented Makita from performing these tests, Makita submits that critical evidence has been destroyed or altered thus significantly prejudicing Makita's ability to defend itself. (Doc. # 21, at 8-9.)  Accordingly, Makita maintains, Leffler's examination amounted to spoliation.  As a remedy, Makita proposes dismissal of Victor's lawsuit.  (Doc. # 21, at 15.)

Victor counters that his expert did not destroy or alter evidence at all.  Instead, Victor characterizes Leffler's actions as a meticulous inspection of the evidence that left the evidence fully available for inspection by Makita.  (Doc. # 26, at 2.) Victor identifies Leffler's affidavit stating that Leffler did not to his knowledge alter, modify, or destroy any component of the switch.  (Doc. # 26, at 2 (referring to Doc. # 26, at 9).)  Victor posits that Makita can reassemble the saw and perform any needed tests.  (Doc. # 26, at 2.)  Indeed, Leffler affies that Makita "can reassemble the switch assembly, restoring the saw to a condition that is functionally comparable to when it was received by [Leffler], thereby providing [Makita] with the ability to perform testing."  (Doc. # 2, at 9.)  Thus, Victor argues, there has been no spoliation in this case.

**III. Discussion**

    **A.   The Law of Spoliation**

Because this is a diversity action, federal law governs the

imposition of sanctions for spoliation of evidence. See Martinez v. Brink's, Inc., 171 F. App'x 263, 269 (11th Cir. 2006) (acknowledging that federal law, not state law, governs the imposition of sanctions); see also Flury v. Daimler Chrysler Corp., 427 F.3d 939, 943 (11th Cir. 2005). However, the Court may look to state law principles for guidance so long as those principles are consistent with federal spoliation principles. Flury, 427 F.3d at 944; Optowave Co. v. Nikitin, No. 6:05-cv-1083, 2006 U.S. Dist. LEXIS 81345, at *24 (M.D. Fla. Nov. 7, 2006).

"Spoliation is the intentional destruction, mutilation, alteration, or concealment of evidence." Optowave Co., 2006 U.S. Dist. LEXIS 81345, at *21 (internal quotation marks omitted) (quoting Black's Law Dictionary 1437 (8th ed. 2004)); accord Floeter v. City of Orlando, No. 6:05-cv-400, 2007 U.S. Dist. LEXIS 9527, at *14 (M.D. Fla. Feb. 9, 2007). "Generally, spoliation is established when the party seeking sanctions proves (1) that the missing evidence existed at one time; (2) that the alleged spoliator had a duty to preserve the evidence; and (3) that the evidence was crucial to the movant being able to prove its prima facie case or defense." Floeter, 2007 U.S. Dist. LEXIS 9527, at *15 (M.D. Fla. Feb. 9, 2007) (citing Optowave, 2006 U.S. Dist. LEXIS 81345, at *8; Golden Yachts, Inc. v. Hall, 920 So. 2d 777, 781 (Fla. 4th DCA 2006)).

A sanction for spoliation is appropriate, though, only where

the spoliator acted in bad faith.  Id.  To address spoliation, a court may impose sanctions ranging from dismissal of the spoliator's case to an inference that the missing evidence would have been unfavorable to the spoliator.  See Flury, 427 F.3d 939, 945 ("As sanctions for spoliation, courts may impose the following: (1) dismissal of the case; (2) exclusion of expert testimony; or (3) a jury instruction on spoliation of evidence which raises a presumption against the spoliator.").  To justify even the mild sanction of an adverse inference, though, the Court must find bad faith.  Bashir v. Amtrak, 119 F.3d 929, 931 (11th Cir. 1997) ("In this circuit, an adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith."); accord Penalty Kick Mgmt., Ltd. v. Coca Cola Co., 318 F.3d 1284, 1293-94 (11th Cir. 2003).

**B.   No Spoliation Sanction Is Appropriate in this Case Because There Is No Bad Faith**

In this case, no spoliation sanction is appropriate because the disassembly of the subject saw did not involve bad faith. Makita attempts to show that Victor disassembled the saw in bad faith by pointing to the fact that Victor "did not make any attempt to put Makita on notice before the disassembly." (Doc. # 21, at 17.)  According to Makita, this demonstrates that Victor did not act in good faith.  (Doc. # 21, at 17.)  It is unclear whether Makita argues that the failure to notify potential defendants before examining evidence is in all cases bad faith, or whether

5

Makita argues that it is bad faith only on the facts of this case. The Court addresses both arguments.

The law contains no general requirement that a potential plaintiff notify all potential defendants before examining an offending instrumentality. See Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 81 (3d Cir. 1994). In Schmid, the Third Circuit addressed facts strikingly similar to the facts in this case. Schmid was injured when a circular saw kicked back and cut his hand. Id. at 77. Schmid claimed that the saw's blade guard failed to snap back over the blade in time to prevent his injury. Id. Schmid theorized that a design defect allowed debris to collect in the blade guard mechanism, impeding its operation. Id. Schmid's counsel sent the offending saw to an expert for examination. Id. The expert disassembled the blade guard to determine why it closed sluggishly. Id. He found debris caught in the mechanism, some of which fell out during the inspection. Id. The expert took photographs to document his examination. Id. He later forwarded the disassembled saw to the defendant. Id. The defendant complained that the expert's disassembly of the saw constituted spoliation. Id. at 77–78. The district court agreed and struck the expert's testimony. Id. at 78.

The Third Circuit reversed.[2] Id. at 81. The court wrote,

---

[2]The appellate court also noted that the expert did not destroy the saw, but merely disassembled it. Id. at 79. This is just what Leffler did. In Grand Hall Enter. Co. v. Mackoul, the

> In the final analysis, it seems to us that we could affirm the district court only if we were willing to hold that an expert in [this expert's] position has an affirmative duty not to conduct an investigation without affording all potential defendants an opportunity to have an expert present. We decline to so hold.

Id. The court explained that early accident investigations often either narrow the field of potential defendants or forestall litigation altogether. Id. A rule that prevents such investigations without first giving all potential defendants an opportunity to participate would be inefficient if not unworkable. Id.

This Court finds the Third Circuit's reasoning persuasive. A determination that bad faith is demonstrated by the mere failure to give all potential defendants an opportunity to participate in an early accident investigation would produce the same negative effects identified by the Third Circuit. Thus, this Court declines to determine that the mere failure to notify potential defendants before conducting an investigation, without more, amounts to bad faith.

Makita's argument also fails inasmuch as it is limited to the facts of this case. Citing a protocol promulgated by the American

---

Florida Third District Court of Appeal determined that the mere disassembly of a product did not constitute spoliation at all because no physical evidence was lost or destroyed. 780 So. 2d 275, 276 (Fla. 3d DCA 2001). The Court need not decide whether the mere disassembly of an offending instrumentality constitutes spoliation under federal law, though, because the Court determines that the disassembly in this case did not involve bad faith.

7

Society for Testing and Materials, Makita suggests that a responsible expert would have ensured that Makita was on notice before disassembling the saw. Where testing of evidence is "likely to alter the nature, state, or condition of the evidence so as to preclude or limit additional examination and testing," the protocol requires that other interested parties be given an opportunity to participate in the testing. (Doc. # 21-4, at 26 (ASTM Standard E860-97 § 4.2).) Makita's expert attests that Leffler's investigation was a clear violation of this protocol. (Doc. # 21-4, at 21.) Because this protocol was not observed, Makita posits that there must have been bad faith.

Victor does not concede to violation of the protocol, however. Indeed, Leffler's affidavit reveals that Leffler believed his disassembly of the saw would not preclude or limit additional examination and testing, and, therefore, the protocol did not require notice to Makita. Leffler affies that his investigation complied with section 4 of ASTM Standard E860-97, and that Makita can reassemble the saw, returning it to a condition that would allow testing. (Doc. # 26, at 9.) The Court finds that Leffler believed his investigation complied with the protocol. Thus, even if it actually did not comply, such noncompliance would not raise an inference of bad faith. On this record, the Court cannot find that the investigation was conducted in bad faith. There is simply nothing to suggest that the inspection of the saw was designed to

impede Makita's access to relevant evidence.

Without explanation, Makita relates that there is some uncertainty regarding a blade guard spring on the subject saw. (Doc. # 21, at 4.) Makita recalls that, in his deposition, Victor said the blade guard was functional at the time of the accident and at the time he gave the saw to his counsel. Later in his deposition, Victor changed his testimony and said he was uncertain whether the blade guard was functional when he turned the saw over to his counsel. Leffler noted that the blade guard spring was missing when he received the saw. Makita says simply, "[t]his missing spring may constitute additional spoliation of the subject saw, and further hinders [Makita's] ability to assess [Victor's] claims." (Doc. # 21, at 4.) The Court is unsure whether Makita is merely telegraphing its intent to seek spoliation sanctions in the future over the missing spring, or whether the missing spring is relevant to Makita's current motion. The Court declines to speculate about how the missing spring might be relevant to Makita's current motion.[3] In any case, these facts do not demonstrate bad faith.

Because Makita has not shown that the saw was disassembled in bad faith, no spoliation remedy is appropriate in this case. Thus, the Court denies Makita's motion. This does not mean, however,

---

[3] The Court notes Victor has not alleged that the blade guard malfunctioned, and indeed testified that the blade guard worked properly at the time of the accident (Doc. # 22, at 20).

9

that the circumstances involving the disassembly of the saw are necessarily inadmissible at trial.  See <u>Floeter v. City of Orlando</u>, No. 6:05-cv-400, 2007 U.S. Dist. LEXIS 9527, at *21 (M.D. Fla. Feb. 9, 2007).  For example, Makita may be permitted to question the reliability of Leffler's examination with evidence that Leffler did not perform the tests Makita would have performed.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant's Motion for Final Dismissal with Prejudice, or in the Alternative, for the Entry of an Appropriate Spoliation Remedy (Doc. # 21) is hereby **DENIED.**

**DONE** and **ORDERED** in Chambers in Jacksonville, Florida, this <u>9th</u> day of November 2007.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record